**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JUSTICIA J. RIZZO,<br>         Appellant, | DOCKET NUMBER<br>CH-0752-15-0104-I-2 |
|     v. | |
| DEPARTMENT OF VETERANS<br>  AFFAIRS,<br>         Agency. | DATE: August 5, 2022 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Justicia J. Rizzo, Hendersonville, Tennessee, pro se.

Demetrious A. Harris, Esquire, Cincinnati, Ohio, for the agency.

Nicholas E. Kennedy, Esquire, Akron, Ohio, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1       The agency has filed a petition for review and the appellant has filed a cross petition for review of the initial decision, which mitigated the appellant's removal

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

to a 3-day suspension. Generally, we grant petitions such as these only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we DENY the petition for review and GRANT the cross petition for review. We MODIFY the initial decision to find that the appellant proved her affirmative defense of reprisal for protected union activity and to find that the administrative judge erred by imposing any penalty for the appellant's misconduct. Except as expressly modified, we AFFIRM the initial decision.

## BACKGROUND

¶2        The agency removed the appellant from her Administrative Support Assistant position on the basis of the following charges: (1) inappropriate conduct (4 specifications); (2) failure to cooperate with the employee threat assessment team (6 specifications); (3) failure to follow instructions (9 specifications); and (4) failure to follow "official time" procedures (26 specifications). *Rizzo v. Department of Veterans Affairs*, MSPB Docket No. CH-0752-15-0104-I-1, Initial Appeal File (IAF), Tab 1 at 12-23, Tab 6 at 42-51.[2] The appellant filed an appeal in which she claimed, inter alia, that the agency committed due process violations and harmful error and that the removal

---

[2] The agency withdrew 9 specifications of charge 4 at the prehearing conference, leaving 17 specifications at issue in this appeal. IAF, Tab 58 at 1-2.

action constituted retaliation for protected whistleblowing, union activity, and equal employment opportunity (EEO) activity.  IAF, Tab 58 at 2.

¶3        After a hearing, the administrative judge issued a bench decision that reversed the agency's action, finding that the agency failed to prove charge 4 and 3 specifications of charge 1.  *Rizzo v. Department of Veterans Affairs*, MSPB Docket No. CH-0752-15-0104-I-2, Refiled Appeal File, Tab 15, Initial Decision (I-2 ID) at 62-68, 70-72, 79-92.  She found that the agency proved the third specification of charge 1, and she sustained that charge.  *Id.* at 68-70.  She found that the agency proved charges 2 and 3 based on the appellant's admissions that she engaged in the underlying misconduct, but that neither charge could be sustained because the agency failed to prove that disciplining her for the conduct described in charges 2 and 3 promoted the efficiency of the service.  *Id.* at 72-79, 92-93.  She further found that the appellant failed to prove her affirmative defenses of retaliation for EEO and union activity, and she declined to address the appellant's harmful error and due process claims because neither of those claims were related to the single sustained specification.  *Id.* at 93-98.  The administrative judge found that the appellant proved a prima facie case of reprisal for whistleblowing, *id.* at  57-70, and that the agency failed to show by clear and convincing evidence that it would have removed the appellant absent her whistleblowing, *id.* at 98-102.  The administrative judge mitigated the removal action to a 3-day suspension.  *Id.* at 102.

¶4        The agency has filed a petition for review challenging the initial decision.[3] Petition for Review (PFR) File, Tab 1.  The appellant has responded in opposition

---

[3] The appellant filed a petition for enforcement, which was docketed by the Board's Central Regional Office.  *Rizzo v. Department of Veterans Affairs*, MSPB Docket No. CH-0752-15-0104-C-1, Compliance File, Tab 1.  The administrative judge dismissed the petition in an initial decision and forwarded the matter to the Office of the Clerk of the Board.  *Rizzo v. Department of Veterans Affairs*, MSPB Docket No. CH-0752-15-0104-C-1, Compliance Initial Decision (July 7, 2016).  In a November 29, 2017 notice to the parties, the Office of the Clerk of the Board incorporated the documents in MSPB Docket No. CH-0752-15-0104-C-1 into the

to the petition for review and has filed a cross petitioned for review. PFR File, Tabs 6-7. The agency has not responded to the cross petition for review.

## DISCUSSION OF ARGUMENTS ON REVIEW

Interim Relief

¶5     On review, the appellant asserts that the agency did not properly provide her interim relief because, among other things, it has reassigned her and has already proposed additional disciplinary action. PFR File, Tabs 2-3, Tab 8 at 14. She further asserts that the agency's actions constitute EEO and whistleblower retaliation. PFR File, Tab 8 at 16-17. She also requests compensatory and consequential damages. PFR File, Tab 5 at 6.

¶6     We consider the appellant's arguments as a challenge to the agency's certification of compliance with the administrative judge's interim relief order. *See Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 8 (2015). The Board may, at its discretion, dismiss the agency's petition for review if it fails to demonstrate compliance with the administrative judge's interim relief order. 5 C.F.R. § 1201.116(e). However, because we find that the agency's petition does not meet the criteria for review, this final order will render moot any dispute regarding compliance with the interim relief order. *See Ayers*, 123 M.S.P.R. 11, ¶ 8. Thus, we find it unnecessary to issue an order regarding interim relief. *See Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 20 (2016). If the appellant believes the agency is in noncompliance with the Board's final order, she may file a petition for enforcement in accordance with the instructions provided below. To the extent that she wishes to challenge any subsequent agency actions, she is free to do so.

_____

petition for review record in MSPB Docket No. CH-0752-15-0104-I-2 for consideration by the Board. Petition for Review (PFR) File, Tab 12.

<u>The administrative judge properly sustained charge 1.</u>

¶7    As noted above, the administrative judge sustained specification 3 of charge 1, Inappropriate Conduct. I-2 ID at 68-70.  Under this specification, the agency alleged that the appellant picked up documents belonging to the Nurse Manager from a shared printer and, instead of returning them to the Nurse Manager, tore them in half and threw them in the garbage.  IAF, Tab 6 at 43.  The appellant asserts in her cross petition for review that she had no malicious intent and that she was unaware that the Nurse Manager took issue with her actions until she was disciplined for the incident.  PFR File, Tab 7 at 22.  A charge of inappropriate conduct does not generally require an element of intent.  *See Crouse v. Department of the Treasury*, 75 M.S.P.R. 57, 63 (1997).  An agency may incorporate an element of intent by claiming that the employee engaged in intentional misconduct or that the conduct was improper because of the employee's intent.  *Id.*  Here, however, the agency did not incorporate an element of intent into its specification and the administrative judge found, based on her assessment of the Nurse Manager's demeanor when testifying at the hearing, that the Nurse Manager's version of the incident was credible.  *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (holding that the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so).  The appellant has not denied that she committed the acts on which the specification is based, and she has not proffered sufficiently sound reasons for setting aside the administrative judge's credibility determinations.  Moreover, her arguments on review that this was an isolated incident, she was not on notice that her actions were wrongful, and she had no prior disciplinary record, PFR File, Tab 7 at 22, are not reasons why the charge should not be sustained.  We find, therefore, that the administrative judge properly sustained specification 3 of charge 1.

¶8     The appellant also contends on review that the administrative judge erred by sustaining charges 2 and 3 because the charges did not concern "actionable misconduct." PFR File, Tab 7 at 23-24. The appellant misunderstands the initial decision. Although the administrative judge found, based on the appellant's admissions, that the appellant engaged in the charged conduct, she further found that disciplining the appellant for the incidents in charges 2 and 3 did not promote the efficiency of the service. I-2 ID at 72-80, 92-93. The administrative judge's finding is the equivalent of a finding that charges 2 and 3 are not "actionable misconduct." *Cf. Byars v. Department of the Army*, 9 M.S.P.R. 225, 229 (1981) (finding that, although the agency proved the charge, the action must be reversed because the agency did not prove a nexus between the appellant's conduct and the efficiency of the service).

## The appellant failed to prove her affirmative defense of retaliation for EEO activity.

¶9     The appellant contends on review that the administrative judge erred by finding that she failed to prove her affirmative defense of retaliation for EEO activity.[4] PFR File, Tab 7 at 14. When an appellant raises an affirmative defense of discrimination or retaliation under 42 U.S.C. § 2000e-16, the Board first will inquire whether the appellant has shown by preponderant evidence that the

---

[4] The appellant also contends that the administrative judge erred by failing to find that the agency violated her due process rights and committed harmful error. PFR File, Tab 7 at 12, 15. One of the appellant's claims relates to an alleged ex parte contact between the deciding official and a witness pertaining to charge 1, specification 4. *Id.* at 15; Hearing Transcript, Oct. 26, 2015, at 103 (testimony of the deciding official). Even assuming that the agency violated the appellant's due process rights or committed harmful error with respect to that specification, because the administrative judge did not sustain that portion of the charge, any alleged error on the administrative judge's part provides no basis for reversal of the initial decision. *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (stating that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision). The appellant's other due process/harmful error argument relates to the agency's penalty determination, PFR File, Tab 7 at 12, but, because we find for the reasons discussed below that no discipline is appropriate in this case, we need not discuss this argument.

prohibited consideration was a motivating factor in the contested personnel action. *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶ 28 (2016). Here, the administrative judge found that the deciding official was aware of the appellant's prior EEO activity. I-2 ID at 96. She further found, however, based on her observation of the deciding official's demeanor while testifying at the hearing, that the appellant's prior EEO activity was not a motivating factor in the decision to take action against her. *Id.* at 96-97. Although the appellant asserts that the administrative judge's findings on this issue are incorrect, she has not articulated any specific error in them, and she has not identified any sufficiently sound reasons to set aside the administrative judge's credibility determinations. *Haebe*, 288 F.3d at 1301. We find, therefore, that the administrative judge correctly found that the appellant failed to prove her affirmative defense of retaliation for EEO activity.[5]

<u>The appellant's disclosure was a contributing factor in her removal.</u>

¶10    In an adverse action appeal such as this one, an appellant's claim of whistleblower reprisal is treated as an affirmative defense. *Ayers*, 123 M.S.P.R. 11, ¶ 12. In such an appeal, once the agency proves its initial case by preponderant evidence, the appellant must show by preponderant evidence that she made a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the agency's personnel action. *Id.* An appellant can prove the contributing factor element through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 21 (2016).

---

[5] Because we discern no error with the administrative judge's motivating factor analysis or conclusion regarding this claim, we do not reach the question of whether retaliation was a "but for" cause of the removal action. *See Babb v. Wilkie*, 589 U.S. ___, 140 S. Ct. 1168, 1177-78 (2020).

¶11     On review, the agency asserts that the administrative judge erred in finding that the appellant's protected disclosure was a contributing factor in her removal because the deciding official did not know about the disclosure.  PFR File, Tab 1 at 10; Hearing Transcript (HT), Oct. 26, 2015, at 52 (testimony of the deciding official).  The administrative judge, in her bench decision, found that the deciding official knew about the appellant's disclosure because, although she testified that she was not aware of the appellant's whistleblower complaint and did not consider her to be a whistleblower, she testified that she was aware of "issues" at the agency facility and decided to move the appellant to a different part of the agency in order to "salvage her employment."[6]  I-2 ID at 60; HT, Oct. 26, 2015, at 43 (testimony of the deciding official); *see* 5 U.S.C. § 1221(e)(1)(A).  We also considered the deciding official's testimony on cross examination when questioned about her awareness of the events surrounding the disclosure that there was "a whole series of issues" surrounding the appellant and that she "got pulled into" these issues.  HT, Oct. 26, 2015, at 79 (testimony of the decision official).

¶12     The administrative judge implicitly based her conclusion regarding the knowledge element on the deciding official's demeanor at the hearing when she found her testimony that she did not know about the disclosure was less persuasive than the testimony that she knew about broader issues in the agency. I-2 ID at 60.  The Board may overturn such credibility determinations only when it has "sufficiently sound" reasons for doing so.  *Haebe*, 288 F.3d at 1301.  The

---

[6] We agree that the protected disclosure element is satisfied because the appellant reasonably believed that there was a violation of agency rules and policies against patient abuse when she reported to the nursing home administrator and patient advocate that a patient had been experiencing symptoms that called for immediate attention and that a charge nurse did not properly respond to her when she reported as such.  I-2 ID at 57-59;  IAF, Tab 62 at 26-29, 111-13;  *see* 5 U.S.C. § 2302(b)(8);  *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 20 (2013) (finding that the appellant made a protected disclosure that medical carts were not cleaned and restocked because she reasonably believed this evidenced a substantial and specific danger to public health or safety).

agency has failed to present such reasons here. Accordingly, we find that the agency has not provided a reason to disturb the initial decision's finding that the deciding official knew about the disclosure. Further, the removal occurred within 1 year of the appellant's disclosure. IAF, Tab 1, Tab 62 at 111-13. Thus, we agree that, under the statutory knowledge-timing test, it was a contributing factor in the personnel action. I-2 ID at 60; *see* 5 U.S.C. § 1221(e)(1)(B); *Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶ 22 (2010).

<u>The agency did not prove by clear and convincing evidence that it would have removed the appellant absent her protected disclosure.</u>

¶13        The agency challenges the initial decision, stating that it proved by clear and convincing evidence that it would have removed the appellant absent her protected disclosure because there was no strong motive to retaliate against the appellant and because an agency human resources specialist testified regarding actions that the agency took against similar employees who were not whistleblowers. PFR File, Tab 1 at 14-15. When, as here, the appellant establishes a prima facie case of whistleblower reprisal, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel action absent any protected activity. *Campbell v. Department of the Army*, 123 M.S.P.R. 674, ¶ 12 (2016). In determining whether the agency has met this burden, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers, but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view the *Carr* factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Mithen v. Department of Veterans Affairs*, 122 M.S.P.R. 489, ¶ 36 (2015), *aff'd*,

652 F. App'x 971 (Fed. Cir. 2016). The U.S. Court of Appeals for the Federal Circuit has held that the agency must satisfy a "high burden of proof" in cases where an employee has already shown that whistleblowing was a contributing factor to the personnel action. *Miller v. Department of Justice*, 842 F.3d 1252, 1263 (Fed. Cir. 2016).

¶14    Here, we find that the agency's evidence in support of the first *Carr* factor, regarding the strength of the evidence in support of the agency's action, is weak. The administrative judge concluded that discipline was only warranted for one specification of charge 1 involving the appellant's inappropriate conduct when she threw away the documents of a coworker after she retrieved them from the printer. I-2 ID at 93. The agency imposed the appellant's removal on the basis of the following charges: (1) inappropriate conduct including 3 underlying specifications involving 3 personal issues and 1 underlying specification related to an incident of throwing away the documents of a coworker from the printer (2) failure to cooperate with the employee threat assessment team including 6 underlying specifications when the appellant failed to attend meetings with the team; (3) failure to follow instructions including 9 underlying specifications when the appellant sent out emails during the period when she was on administrative leave but did not "cc" (share) the email with the chair of the threat assessment team, as she had been instructed to do; and (4) failure to follow "official time" procedures, including 26 underlying specifications (only 17 of which the deciding official sustained) when the appellant sent out union emails when she was not on official time and did not request official time for the time she had used to compose the emails. IAF, Tab 1, Tab 6 at 42-51. The administrative judge found that the only conduct constituting cause for discipline was charge 1 based upon the underlying specification involving the appellant's disposal of her coworker's documents from the printer. I-2 ID at 61-93.

¶15    The administrative judge did not sustain the first specification of charge 1 in part because, based upon their demeanor, she credited the testimony of the

appellant and another witness who stated that the appellant did not engage in a confrontation. I-2 ID at 66. She also did not sustain the second specification of charge 1 because of the straightforward and consistent demeanor of the appellant and another witness when they testified that the appellant did not follow another employee down the hallway. I-2 ID at 68. Next, the administrative judge did not sustain the fourth specification of charge 1 because she found that the appellant's door slamming and possible staring did not constitute the type of threatening behavior that would support a charge of inappropriate conduct. I-2 ID at 71-72. She also did not sustain the fourth charge regarding the appellant's failure to follow proper time procedures when sending union emails because of the appellant's clear and straightforward testimony that was consistent with the record evidence that she was not aware of an official time policy regarding emails. I-2 ID at 80-92. The administrative judge was in the best position to determine whether these witnesses credibly testified about the personal interactions described in charge 1. We also have found nothing in the record, and the agency has not presented anything, to contradict the appellant's testimony, which the administrative judge found to be credible, that she was unaware that she could not send the emails. I-2 ID at 80-92. Because the administrative judge's findings are based implicitly and explicitly on the demeanor of the witnesses, and there is otherwise no basis for disturbing the administrative judge's findings, we agree with her decision not to sustain the three specifications underlying charge 1 and charge 4. *See Haebe*, 288 F.3d at 1301.

¶16 The administrative judge further found, as noted above, that the agency failed to show a nexus between charge 2 and charge 3 and the efficiency of the service and that it thus was not appropriate to impose discipline for the charges. I-2 ID at 92-93. The nexus requirement, for purposes of whether an agency has shown that its action promotes the efficiency of the service, means that there must be a clear and direct relationship between the articulated grounds for an adverse action and either the employee's ability to accomplish her duties satisfactorily or

some other legitimate Government interest. *Valenzuela v. Department of the Army*, [107 M.S.P.R. 549](), ¶ 14 (2007). The administrative judge found that the charges involved the appellant's failure to meet with the threat assessment team and to "cc" its chair on emails that she had sent from her grandmother's computer while on administrative leave. I-2 ID at 92-93. She credited the unrebutted testimony of the chair of the threat assessment team that meeting with the team was purely voluntary and that the agency had no authority to require employees to "cc" him on emails or to subject them to discipline for not doing so. *Id.* The agency has not challenged this testimony. Further, we find no reason to disturb the administrative judge's decision to credit the testimony. *See Haebe*, 288 F.3d at 1301. Thus, we agree that the agency has failed to show that discipline for these charges promotes the efficiency of the service.

¶17        Accordingly, we agree that charge 1, which the administrative judge sustained based upon one underlying specification related to the appellant's discarding a colleague's documents from the printer, is the only charge for which discipline is warranted. Thus, we find that, under the first *Carr* factor regarding the evidence in support of the agency's action, the agency's failure to prove a majority of the charges and specifications strongly weighs against a finding that it would otherwise have removed the appellant absent her protected disclosure. *Ayers*, [123 M.S.P.R. 11](), ¶ 28 (finding that, regarding the first *Carr* factor, the agency's failure to prove a majority of its specifications was a sign of overreach).

¶18        Next, we find that the agency's proffer in support of the third *Carr* factor, which relates to similarly situated employees, was incomplete. An agency should liberally produce evidence of similarly situated employees that are not whistleblowers to help it carry its overall burden to prove by clear and convincing evidence that it would have taken the action against the whistleblower regardless of the whistleblowing and that the absence of any evidence concerning this *Carr* factor may well cause the agency to fail to prove its overall case. *Whitmore v. Department of Labor*, [680 F.3d 1353](), 1374-75 (Fed. Cir. 2012).

¶19     An agency employee labor relations specialist testified about similarly situated employees.  HT, Oct. 27, 2015, at 261-63 (testimony of the employee labor relations specialist).  Specifically, he testified that the agency proposed another employee's removal for inappropriate conduct, but because the employee was remorseful, the deciding official, who was also the deciding official in this appeal, negotiated a last chance agreement with that employee.  *Id.* at 261-63.  He further testified that other employees have received letters of proposed removal for charges of inappropriate conduct and that he was the employee labor relations specialist in those situations.  *Id.* at 263.  This testimony, which includes one individual whose removal was not actually imposed and vague information about other individuals, does not particularly support the agency's argument that it took similar actions against nonwhistleblowers.  Although the agency proffered some evidence of alleged comparators who engaged in "inappropriate conduct," it failed fully to account for differences in kinds and degrees of conduct and it failed to provide complete information on the outcome of each of the comparators' cases.  Having submitted evidence concerning how it treated other employees, the agency took a risk in failing to fully explain the context of that evidence.  *Cf. Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018) (stating that the risk associated with having no evidence in the record for a particular factor falls on the Government); *Miller*, 842 F.3d at 1262 (stating that the Government's failure to produce evidence on this factor may be at the agency's peril considering the Government's advantage in accessing this type of evidence); *Whitmore*, 680 F.3d at 1374 (holding that, to the extent evidence on *Carr* factor 3 exists, the agency is required to come forward with all reasonably pertinent evidence; the failure to do so may be at the agency's peril).  We find, therefore, that *Carr* factor 3 weighs against the agency.

¶20     With our analysis of the first and third *Carr* factors in mind, we have considered the agency's assertion regarding the second *Carr* factor that the deciding official did not have a strong motive to retaliate.  PFR File, Tab 1 at 14.

However, based upon our analysis of the other *Carr* factors, we find that the agency has failed to meet its high burden of proving by clear and convincing evidence that it would have removed the appellant absent her protected disclosure. *Miller*, 842 F.3d at 1263 (finding that the agency did not prove by clear and convincing evidence that it would have taken the same action absent the appellant's protected disclosure when, although it produced some evidence regarding a lack of motive to retaliate, the strength in support of its action was weak and it did not present evidence regarding similarly situated nonwhistleblowers).

The agency did not prove by clear and convincing evidence that it would have removed the appellant absent her protected union activity.

¶21    The appellant also asserts in her cross petition for review that the administrative judge erred by finding that she failed to prove her affirmative defense of reprisal for protected union activity.  PFR File, Tab 7 at 14.  We agree.

¶22    Following the enactment of the Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat. 1465, an appellant may file an individual right of action appeal with the Board concerning alleged reprisal not only for making protected disclosures under 5 U.S.C. § 2302(b)(8) but also for engaging in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D). *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 12 (2015).  The appellant's claim of reprisal for engaging in protected union activity is protected under 5 U.S.C. § 2302(b)(9)(B).  *Id.*  Therefore, the administrative judge was required to afford the appellant notice that, to prevail in her claim of reprisal for union activity, she must show that she testified or assisted another employee in any appeal, complaint, or grievance right granted by any law, rule, or regulation, and that such activity was a contributing factor in the agency's decision to take a personnel action against her.  *Id.*, ¶ 13.  If she makes such a showing, the agency must show by clear and convincing evidence that it would have taken the same personnel action absent any protected activity.  *Id.*, ¶ 14.  The record reflects that

the administrative judge did not afford the appellant notice of the correct legal standard for proving her claim of reprisal for union activity.  IAF, Tab 53 at 2-3.

¶23    Under the circumstances, it would generally be appropriate to remand the appeal to afford the appellant the opportunity to present evidence and argument after receiving proper notice of her burden of proof.  *Alarid*, 122 M.S.P.R. 600, ¶ 17.    Here, however, we find that the record is fully developed and the appellant's affirmative defense can be resolved without a remand.

¶24    First, it is undisputed that the appellant engaged in protected union activity and that the relevant agency managers were aware of that activity.  The appellant was, or recently had been, a union steward, and some of the misconduct for which she was charged was alleged to have occurred while she was acting in furtherance of her union rights.  IAF, Tab 6 at 42-46; HT, Oct. 26, 2015, at 50 (testimony of the deciding official).    Thus, we find that the appellant has satisfied the knowledge/timing test and has proven that her protected activity was a contributing factor in the agency's decision to take a personnel action against her. The burden of persuasion now shifts to the agency to show by clear and convincing evidence that it would have taken the same action absent the appellant's protected union activity.

¶25    For the reasons set forth above, the evidence in support of the agency's action is exceedingly weak.  The administrative judge properly found that only 1 specification of the 36 sustained by the deciding official warranted any discipline, and that single sustained specification was for the minor offense of taking someone else's document from a shared printer.  The administrative judge did not sustain the failure to follow procedures for official time charge because the agency did not prove that it put the appellant on notice of the procedures she purportedly failed to follow.  I-2 ID at 80-92.  The administrative judge found that the agency failed to show that disciplining the appellant for the second and third charges promoted the efficiency of the service.  *Id.* at 92-93.  *Carr* factor 1 weighs strongly in favor of the appellant.

¶26    As to *Carr* factor 2, the administrative judge found that the deciding official was not motivated by anti-union animus. I-2 ID at 97. Although she did not conduct a full analysis because she did not apply the correct legal standard, she grounded her finding in her assessment of the deciding official's credibility, and we must defer to that finding. *Haebe*, 288 F.3d at 1301.

¶27    Similarly, as noted above, the agency made only a limited proffer concerning other employees who committed similar misconduct and none of them were removed. I-2 ID at 102. However, presumably because the parties were not on notice of the correct legal standard, the agency failed to present any evidence as to whether the other employees had engaged in union activity.

¶28    Even assuming, however, that *Carr* factors 2 and 3 weigh in favor of the agency, and under the unique circumstances of this case, we find that *Carr* factor 1 heavily outweighs the evidence relating to *Carr* factors 2 and 3. We find, therefore, that the agency has failed to show by clear and convincing evidence that it would have taken the same action against the appellant absent her protected union activity.

¶29    The appellant has shown that the agency's decision to remove her was based on a prohibited personnel practice described under 5 U.S.C. § 2302(b)(8) & (b)(9)(B). Therefore, under 5 U.S.C. § 7701(c)(2)(B), the action may not be sustained, and the administrative judge erred by mitigating the penalty rather than reversing the removal action outright.[7] We have considered the appellant's arguments on review that the administrative judge interfered with her questioning of certain witnesses and find that the appellant has not shown that the administrative judge abused her discretion in this regard. PFR File, Tab 7 at 12-13; *see* 5 C.F.R. § 1201.41(b).

---

[7] Because we find that no penalty should be imposed for the appellant's misconduct, it is not necessary to consider the appellant's arguments that the penalty of a 3-day suspension is excessive and that the deciding official violated her due process rights regarding her penalty analysis. PFR File, Tab 7 at 12-13, 22.

¶30     Finally, the appellant has filed a motion for protective order in which she requests an order prohibiting the agency from accessing her agency-administered medical records.  PFR File, Tab 14 at 3.  The appellant alleges that the agency has improperly accessed the medical records of its employees in other circumstances, but she has not alleged that it has actually accessed her records without authorization, and she asserts that she does not receive medical care from the agency.  *Id.*  The appellant's motion does not meet the requirements of 5 C.F.R. § 1201.55(d) because it does not contain a statement of reasons explaining why a protective order is necessary to protect her from harassment and it does not appear that the appellant filed her motion "as early in the proceeding as practicable."  Therefore, we deny the motion.

¶31     Accordingly, we reverse the appellant's removal action.

**ORDER**

¶32     We ORDER the agency to cancel the removal action effective October 24, 2014.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶33     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶34     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has

taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶35      No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶36      For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR
COMPENSATORY DAMAGES**

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages including interest, reasonable expert witness fees, and costs, 5 U.S.C. § 1214(g)(2), which you may be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE PARTIES**

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

## NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[9]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

/s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.


# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a.    Employee name and social security number.
   b.    Detailed explanation of request.
   c.    Valid agency accounting.
   d.    Authorized signature (Table 63).
   e.    If interest is to be included.
   f.    Check mailing address.
   g.    Indicate if case is prior to conversion.  Computations must be attached.
   h.    Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.    Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.    Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.    Outside earnings documentation statement from agency.
4.    If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.    Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.    If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.    If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a.    Must provide same data as in 2, a-g above.
   b.    Prior to conversion computation must be provided.
   c.    Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.